WALTER PARTINGTON, PLAINTIFF-APPELLEE, v. BERNARD MILLER AND MILLIE DIMOND KRIMKE, DEFENDANTS-APPELLANTS.

Argued January 17, 1939—Decided April 13, 1939.

Before Justices TRENCHARD, PARKER and PERSKIE.

For the appellant Bernard Miller, *Schotland, Harrison & Schotland.*

For the appellant Millie Dimond Krimke, *Nathan Ehrlich (Joseph J. Schotland,* of counsel).

For the appellee, *Donald Karrakis (Harold L. Kaplan,* of counsel).

The opinion of the court was delivered by

PERSKIE, J.  The basic question requiring decision is whether, under the proofs of the case at bar, plaintiff—the tenant—was entitled to recover from defendants—his landlords—the balance of the deposit which he had made under his lease with them.

From the case as settled by the court below, and the record as submitted, it appears that on October 25th, 1929, plaintiff entered into a written contract of leasing with defendants for two stores in the building located at 432-434 Grove street, East Orange, New Jersey, together with a portion of the cellar underneath said premises. The term was for ten years; it began on January 1st, 1930, and was to end on December 31st, 1939. The rent reserved commenced with $70 a month for the first year and $80 a month for the second year. Thereafter for the next two years it increased annually at the rate of $5 a month and for the balance of the term it increased annually at the rate of $10 a month. The lease contained, among others, a covenant which required plaintiff, contemporaneously with the execution of the lease, to deposit with defendants the sum of $600 "as security for the payment of the rent and the performance of this lease required to be performed by the tenant." The covenant further provided that "in the event of any default by the tenant in the performance of any of the terms and conditions thereof, the landlords at their option may have recourse to said fund to satisfy any unpaid rent," and "to make good any default of the tenant," and "the landlords may retain the same in whole, or in part, *until the expiration of the entire term of this lease,*" and "at such expiration to apply the same by reason of any default on the part of the tenant." The covenant further provided that "in case the tenant has *faithfully performed all the terms, covenants and conditions* of the within lease, then the landlord shall, *at the expiration of the term of this lease,* return said security to the tenant." (Italics ours.) The leased property was subject to a mortgage held by the Eleventh Ward Building and Loan Association of Newark, hereinafter called the Building and Loan Association.

Plaintiff entered into possession under the terms of the lease, which was not recorded, and paid rent to the landlords in accordance with the rent reserved therein until April 1st, 1933, when by agreement between the parties, effected by a letter under date of March 7th, 1933, the rent was reduced to $70 a month for the month of March, 1933, and to $80 a month thereafter. The plaintiff paid the rent as so reduced

to the defendants until December 1st, 1933, at which time defendants lost possession of the premises as will presently appear. The total rent paid between April 1st, 1933, and December 1st, 1933, was $100 less than should have been paid had the parties adhered to the rentals reserved in the lease.

On December 1st, 1933, the Building and Loan Association took possession of the demised premises by reason of a default in the mortgage held by it. Plaintiff then attorned to the Building and Loan Association, and paid rent to it accordingly of $80 a month. Subsequently, on July 6th, 1935, the Building and Loan Association acquired title to the premises, by virtue of a sheriff's deed in foreclosure, thus cutting off defendants' equity of redemption. Plaintiff was not made a party to that foreclosure suit.

Plaintiff then demanded the return of the security deposited by him with defendants, his original landlords. This demand was refused and on February 7th, 1938, the present suit was instituted. Plaintiff expressly credited defendants with the sum of $100, the difference between the rent paid by plaintiff and that actually due defendants until December 1st, 1933, when attornment was made to the Building and Loan Association, and sought recovery for the balance of $500. Pursuant to plaintiff's demand, defendants filed written specifications of their defenses. They denied liability. They further set up the following defenses: that under the lease there was no obligation on their part to return the security to the plaintiff until the expiration of the lease, December 1st, 1939; that the term of the lease had not expired, and, therefore, the suit was premature; and that plaintiff had not complied with the terms of the lease in that he did not pay the full rent reserved thereunder to the extent of $560. This sum represents the difference between the rent reserved by the lease and the rent actually paid from March 1st, 1933, to December 1st, 1933, and from December 1st, 1933, to August 1st, 1935, plus interest thereon, in all $661.10. Additionally, defendants filed a set-off for this sum of $661.10 claiming that in pursuance of the terms of the lease they concluded to, and did in December of 1937, exercise their right of resorting to

the security to satisfy this amount. They sought a judgment against plaintiff for the balance of $61.10.

In this posture of the case, defendants moved for a nonsuit on plaintiff's claim upon the grounds that the suit was prematurely instituted, and that since there was no consideration for the reduction of the rent given to plaintiff—and notwithstanding plaintiff's attornment to the Building and Loan Association—he, plaintiff, was only discharged from liability for the rent reserved to the extent of the amount of the rent which he actually paid to the Building and Loan Association. Defendants also moved for judgment on their counter-claim. Plaintiff on the other hand challenged the efficacy of the grounds urged in support of the motion. Especially did he urge that the proper procedure for defendants to have followed was to have filed a counter-claim in the foreclosure proceedings; that defendants' default in the mortgage was an anticipatory breach of the lease which the plaintiff could treat as having terminated the lease at the time the Building and Loan Association obtained possession of the leased premises; and that the lease was terminated by the foreclosure proceedings even though plaintiff was in possession and not made a party defendant to said suit because he could have but did not record the lease. *R. S.* 2:29-27.

The trial judge denied defendants' motion to nonsuit upon the ground that when the Building and Loan Association took possession of the mortgaged premises, "the plaintiff had the right then to seek recovery of the security and did not have to wait until the expiration date of the lease." Accordingly, he entered judgment in the sum of $500 in favor of plaintiff. As to the set-off, he concluded that it should not be allowed because "plaintiff attorned to the Building and Loan Association" after the latter "took possession" of the leased premises, and, therefore, defendants were barred from collecting from plaintiff. Defendants appeal.

1. We think that the trial judge fell into reversible error; he misconceived the applicable rule of law. The facts that the Building and Loan Association took possession of the mortgaged premises, after default, and that plaintiff attorned to the Building and Loan Association and thereafter paid it

the rent of $80 a month, are beside the point. For the end result thereof merely was that defendants became disentitled to sue plaintiff for the rents which he actually paid to the Building and Loan Association. *Cf. Hinck* v. *Cohn,* 86 *N. J. L.* 615 (at *p.* 617); 92 *Atl. Rep.* 378; *Del-New Co.* v. *James,* 111 *N. J. L.* 157; 167 *Atl. Rep.* 747. Defendants sought no such recovery here. And whatever the end result may be because of plaintiff's failure to record his lease (*R. S.* 2:29-27), or because of his failure to be joined as a party defendant (*Cf. American Italian Building and Loan Association, &c.,* v. *Liotta,* 117 *N. J. L.* 467; 189 *Atl. Rep.* 118; 108 *A. L. R.* 1346; *Harvester Building and Loan Association* v. *Elbaum,* 119 *N. J. L.* 437; 196 *Atl. Rep.* 709) is also, in our opinion, beside the point; it is not necessary to a decision of this cause; we intimate no opinion thereon. For, the rights and liabilities of the respective parties to the security pledged are limited to the relationship of pledgor and pledgee. Defendants are liable solely as pledgees, and not otherwise, for the return of the pledge. That liability, however, does not run with the reversion unless the purchaser assumes the obligation to return the deposit. There is, of course, no claim here that the Building and Loan Association assumed the pledgees' obligation. We perceive nothing in principle which distinguishes the case at bar from the typical cases of our Court of Errors and Appeals such as *Kaufman* v. *Williams,* 92 *N. J. L.* 182 (at *p.* 185); 104 *Atl. Rep.* 202, and *Cummings* v. *Freehold Trust Co.,* 118 *N. J. L.* 193 (at *p.* 194); 191 *Atl. Rep.* 782. Defendants' loss of the reversion to the leased premises was no bar to their rights as pledgees to insist that plaintiff, as pledgor, should comply with the terms of his pledge. This he failed to do. His suit was prematurely instituted.

2. Additionally, plaintiff utterly failed further to comply with the terms of his undertaking. He did not fully pay the rent which, under the lease, he agreed to pay. Defendants, by their counter-claim, sought to recover from plaintiff not the rent which he actually paid to the Building and Loan Association; they sought to recover merely the money here (rent) which plaintiff was obliged to pay under the agreement

relating to the pledged security. There was no consideration for defendants' promise to accept less than that which was due them under the terms of plaintiff's secured undertaking. *Levine* v. *Blumenthal,* 117 *N. J. L.* 23; 186 *Atl. Rep.* 457; *affirmed,* 117 *N. J. L.* 426; 189 *Atl. Rep.* 54. That this is so is conceded. For plaintiff in fact credited defendants with the deductions of rent ($100) from March 1st, 1933, until December 1st, 1933. Defendants were clearly entitled under the lease to resort to the pledged security to satisfy the deductions in rent, the allowance of which was without consideration. It therefore follows that their set-off should have been allowed to the extent of $560 shortage in the stipulated rent up to the time of the foreclosure sale. Their claim for interest thereon is without legal basis. Apart from the rule stated in *Warren Bros. Co.* v. *Hartford Insurance Co.,* 102 *N. J. L.* 616; 135 *Atl. Rep.* 479, it is to be noted that defendants had the use of the $600 deposit over the entire period; and the fact that they voluntarily forbore to collect from the deposit the rent shortages, to which they agreed though without consideration, would not entitle them on a revocation of that forbearance to more than the face of their claim against the fund. So, when defendants in December of 1937 exercised their rights against the pledged security to the extent of $560 they appropriated that part of the $600 fund under the terms of the pledge, leaving the other $40 to await the termination of the pledge period.

The judgment for plaintiffs of $500, being the amount of the $600 fund less $100 voluntarily credited by plaintiffs, is reversed, and the cause remanded to the trial court to enter judgment generally for the defendants; so far as concerns $560 of the $600 fund as having been satisfied by allowance of the set-off; and as to the remaining $40 as not due at the time of commencing the action, such judgment to be expressly without prejudice to a new suit for the $40 balance after December 31st, 1939, being the expiration of the term specified in the lease.